UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:08-cr-535-T-23MAP
  8:16-cv-1643-T-23MAP

JOHNNY FREEMAN, JR.
_____/

**O R D E R**

Freeman's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his convictions for two counts of brandishing a firearm during a crime of violence, for which offenses he is imprisoned for a total of 562 months. Freeman was convicted and sentenced under a favorable plea agreement. (Doc. 25 in 08-cr-535)

Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b) [Rules Governing § 2255 Proceedings], allows the district court to

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*).

## **FACTS**[2]

> Between 10/21/2008 and 11/28/2008 Johnny Freeman, Jr, and his accomplice, Melissa Nicolau committed numerous bank robberies in the Middle District of Florida, taking $37,510.00 in United States currency.
>
> Freeman and Nicolau had a regular *modus operandi* they used when they robbed banks. Freeman and Nicolau would first "case" the targeted bank and if the situation, "felt right," they would rob that bank. Nicolau would drive Freeman to the bank, Freeman would go into the bank with a disguise, normally a wig and glasses. Once inside the bank, he would approach the victim tellers, brandishing a silver Ruger 9mm firearm, demanding money, and ordering tellers to the floor. After getting the money he exited the bank and would be driven away by Nicolau, who would be driving one of his vehicles. He would give some of the money to Nicolau in exchange for her assistance in the bank robberies. Nicolau was aware that Freeman was armed with a firearm. At one point, Nicolau went into one of the banks and was recognized at that bank, and her photo [was] caught on surveillance cameras. Detectives located and questioned Nicolau concerning the robberies. She admitted to all of the robberies except one, a Regions bank robbery on November 28th wherein she stated that she and Freeman had a falling out and she did not participate (although she helped him commit two other robberies on the 28th). Among the armed robberies committed by the defendant, they included a robbery of a Regions Bank, 4701 N Armenia Avenue, Tampa, Florida, on October 24, 2008, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation and a robbery of a BB&T Bank, located at 404 Oakfield Drive, Brandon, Florida, on November 7, 2008, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation.

---

[2] This summary of the facts is from the plea agreement. (Doc. 25 in 08-cr-535)

> During the execution of a search warrant at Freeman's residence agents found an abundance of evidence that related to the robberies. Some of the items of evidence recovered were: the silver 9mm Ruger semi-automatic gun Freeman used to rob the banks in the bank surveillance tapes, $1,100 cash, burned cash with dye pack in the backyard, multiple wigs, sunglasses, a make-up kit, pieces of wigs, and clothing that matches what he wore during multiple robberies.
>
> The firearm used by the defendant during the course of the robberies meets the definition of a firearm under [the] federal statute. The defendant admitted his involvement in the armed robberies.

The indictment charged Freeman with six counts of bank robbery and six counts of brandishing a firearm for each associated bank robbery.  Under the plea agreement, all six bank robbery counts and four of the brandishing counts were dismissed in exchange for Freeman's guilty plea to the remaining two brandishing counts.  First, Freeman pleaded guilty to Count Four, which charges brandishing a firearm while robbing a Regions Bank in Tampa, Florida.  Section 924(c)(1)(A)(ii) mandates the imposition of "a term of imprisonment of not less than 7 years." Freeman was sentenced to the bottom of the guidelines range of 262–327 months. Second, Freeman pleaded guilty to Count Six, which charges brandishing a firearm while robbing an American Momentum Bank in Brandon, Florida.  Section 924(c)(1)(C)(i) imposes a consecutive "term of imprisonment of not less than 25 years" for a second conviction under Section 924(c).  Freeman was sentenced to the mandatory minimum term of three hundred months, consecutive to the term for Count Four.  As a consequence, Freeman is imprisoned for 562 months.

**STATUTE OF LIMITATIONS**

Freeman's motion is time-barred. *See Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[W]e hold that district courts are permitted . . . to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."), and *Jackson v. Sec'y, Dep't of Corr.*, 292 F.3d 1347, 1349 (11th Cir. 2002) (holding that the district court possesses discretion to *sua sponte* question the timeliness of a petition for the writ of habeas corpus). The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a motion to vacate. "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255(f)(1).

Freeman's judgment was entered on July 1, 2009 (Doc. 51 in 08-cr-535), and his limitation expired one year later in 2010. On June 20, 2016, Freeman filed his motion to vacate, which is nearly six years late. (Doc. 1 in 16-cv-1643) Recognizing his untimeliness under Section 2255(f)(1), Freeman asserts entitlement to a new limitation under Section 2255(f)(3), which establishes a limitation from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." Freeman erroneously asserts entitlement to the retroactive application of *Johnson v. United States*, 135 S. Ct. 2551 (2015), which holds unconstitutional the residual clause of the Armed Career Criminal Act ("ACCA"), codified at 18 U.S.C. § 924(e). Freeman was not sentenced under the ACCA; his

mandatory consecutive sentence is under Section 924(c) for brandishing the firearm. *Johnson* is not directly applicable.

Freeman argues for extending *Johnson* to Section 924(c)'s residual clause, which is nearly identical to the ACCA's residual clause. Freeman would not benefit from extending *Johnson* to Section 924(c) because *Johnson* found that only the residual clause of the ACCA was unconstitutionally vague — *Johnson* is inapplicable to the "enumerated offenses clause" and the "elements clause" of the ACCA. Under Section 924(c)(3), a "crime of violence" is defined by both a "use-of-force clause" and a "residual clause." Even if *Johnson* extended to Section 924(c)'s "residual clause," Freeman would not benefit because *Johnson* is inapplicable to the "use-of-force clause." *In re Charles Hines*, No. 16-12454 ___ F.3d ___, 2016 WL 3189822, at *2–3 (11th Cir. June 8, 2016) (some brackets original), explains:

> As noted, *Johnson* rendered the residual clause of [the ACCA] invalid. It spoke not at all about the validity of the definition of a crime of violence found in § 924(c)(3).[3] Further, our Court has not held that *Johnson* invalidates § 924(c)(3)(B). However, even were we to extrapolate from the *Johnson* holding a conclusion that § 924(c)(3)(B) was also unconstitutional, it would not help Hines because his § 924(c) conviction on Count 2 was explicitly based on his companion Count 1 conviction for armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). And a conviction for armed bank robbery clearly meets the requirement for an underlying felony offense, as set out in § 924(c)(3)(A), which requires the underlying offense to include as an element, "the use, attempted use, or threatened use of physical force against the person or property of another."[4]
>
>> [3] Section 924(c)(3) defines a crime of violence as a felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk

> that physical force against the person or property of another may be used in the course of committing the offense." Section 924(c)(3)(B) is similar, but not identical, to the language of the ACCA residual clause invalidated by the Supreme Court in *Johnson*.
>
> [4] Similarly, the ACCA's elements clause, whose validity *Johnson* did not question, defines "violent felony" as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." See 18 U.S.C. § 924(e)(2)(B)(i).
>
> Here, Count 1 charged that Hines "by force, violence and intimidation, did take from the person or presence of [a teller] monies belong[ing] to [a federally-insured bank]" and that in doing so, Hines "did assault and put in jeopardy the life of [two individuals] by use of a dangerous weapon," all in violation of 18 U.S.C. § 2113(a) and (d). These allegations in the indictment mimic the requirements of § 2113 (a) and (d). The statutory elements that these allegations of the indictment repeat clearly meet § 924(c)(3)(A)'s requirement that the underlying felony offense must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."
>
> This means that Hines's conviction under § 924(c) would be valid even if *Johnson* renders the "crime of violence" definition in § 924(c)(3)(B) unconstitutional.

Freeman's sentences under Section 924(c) are based on his convictions for brandishing a firearm during a bank robbery. As a consequence, *Hines* controls, and as *Hines* instructs, Freeman would gain no benefit from extending *Johnson* to Section 924(c).

Accordingly, the motion to vacate (Doc. 1) is **DENIED** as untimely and *Johnson v. United States*, 135 S. Ct. 2551 (2015), is inapplicable. The clerk must enter a judgment against Freeman and close this case.

### DENIAL OF BOTH A
### CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Freeman is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Freeman must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the motion to vacate is clearly time-barred and he is entitled to relief under neither *Johnson* nor *Welch*, Freeman is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Freeman must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 28, 2016.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE